## THE STATE v. FRENCH AND OTHERS.

1. When there is a material variance between the route of the road as applied for, and as actually laid out, the return will be set aside.

2. Where the road, as applied for, is described as running in the line dividing the lands of J. P. and J. F., which is an ancient line, marked by a fence : and the road is laid out by the surveyors not in the said dividing line, but across the lands of J. P., the return will be set aside, although the road be described in the return as laid out in the dividing line between the said lands, and although it be proved that previous to the application, there was a verbal agreement between J. P. and J. F., to alter the dividing line of their lands, to correspond with the line of the road as laid out.

3. The allowance or denial of a writ of *certiorari* rests in discretion, and is not the subject of a writ of error.

This was a writ of error to the Supreme Court, in matter of a public road, laid out by surveyors in the township of Franklin, in the county of Somerset. The court of Common Pleas ordered the return to be recorded; upon which, the proceedings were brought up to the Supreme Court by *certiorari*, and the said court affirmed the order below. The principal ground relied on for error was, that the surveyors laid out the said road in another place than that described in the petition of the applicants for said road.

*H. V. Speer*, attorney for plaintiffs in error; *George A. Vroom*, for defendants.

GREEN, C. J. The first error relied upon for setting aside the return of the surveyors is, that the road as laid out does not correspond with the route described in the petition and order of the court. The road, as applied for, begins "on the south side of the Amwell road, on the line between lands of John Polhemus and John Probasco, thence running southerly along the said line to *the line dividing the lands of John Polhemus and Joseph French, thence in the said dividing line*, in a southerly direction to the lands of Jacob F. Smith, thence across the lands of said Smith, southerly," &c. The monument called for in the description, by which the road is to be laid out, is the *line dividing the lands of*

*John Polhemus and Joseph French.* It appears in evidence, that at the time of the application, and of the return of the road made by the surveyors, there was an ancient line marked by a fence dividing the lands of Polhemus and French. The road was not laid out upon this division line between the farms of Polhemus and French, but entirely over the land of Polhemus, east of the dividing line, leaving a gore of land between the road and the division line, ninety-eight links in width at one end, and fifty-nine links in width at the other.

So great a discrepancy between the application and return has invariably been held fatal to the validity of the return. *Matter of public road,* 1 *South.* 31; *State* v. *Burnet,* 2 *Green,* 385.

The decision rests upon the soundest principles. The object of the proceedings is to divest the landholder of the use of his land, and to vest it in the public. The law requires that the landholder should be informed of the land proposed to be taken. By this, he is enabled to judge whether he will be prejudiced, and to what extent, by the laying out of the proposed road. By this he is enabled to decide whether a due regard to his interest requires that he should assent to, or resist the laying out of the road. But if the petition and notice may call for one line of route of road, and the surveyors may lay another and different one, the notice operates not as a safeguard, but as a snare to the landholder. It is true, that the description of the road in its general course, need not be minute. Something should be left to the discretion of the surveyors. But in such case the landholder is apprized that the line may vary, and he is then forewarned to look to his interests. Upon this point, the decisions of the courts have, from a very early period, been uniform and unvarying.

The validity of the objection is not denied by the defendants in error, but its force is attempted to be evaded. It appears in evidence, that prior to the application for the road, a verbal agreement was entered into between Joseph French and John Polhemus, the owners of the adjoining

lands, by which it was agreed between them, that Polhemus should sell and convey to French the gore between the road as laid, and the old line, so that their line should correspond with the line of the road.   The fact that such agreement had been made was stated to the surveyors when laying out the road, and they accordingly returned that they laid out the road on the line of John Polhemus and Joseph French. The question, then, is not a question of fact, where the line of these farms is, upon which the return of the surveyors might be decisive; but the enquiry is, which is to be deemed the monument—the old, well known line between two adjoining farms, or a line agreed upon between the owners, which had no existence whatever in fact?   Admitting that the agreement between Polhemus and French for the sale of the land was made in good faith, it was totally void, and in no wise binding upon either party.   No agreement in writing was executed; no deed was made; no monuments were set up.   The monument called for in the application and notice was the line dividing the lands of *John Polhemus and Joseph French*.   But can a line which has no actual existence, which is in contemplation merely, be called *a line dividing lands?* And how can such a line run directly through the lands of A., be called a line dividing the lands of *A. and B.?*   And how can such a line be called *a monument?*   The object of the call is to designate a fixed line—to give notice to the public, and to the landholders on the route, where the road is to be laid.   But of what avail can it be, to call for a line which exists only in the contemplation of one or two individuals; which has no actual existence—which is described in no deed, and marked by no monument?   If it had been intended in the application, to refer to a contemplated line, which had been agreed to .be subsequently established, it should at least have been described as the line agreed thereafter to be made, between the adjoining farms.   And it should have been described so as to be intelligible to all persons interested.

There is nothing in the application or in the notice to correct the error, or to guard the landholder against misapprehensions.   The exact course of the road is not given,

nor is it described as a straight line through the farms in question, nor is any other description given which could correct the error.

The variance is a most material one, and cannot be held to fall within that class of cases, which disregards a slight or immaterial variance, which can affect no substantial right. It shifts the whole position of the road easterly a distance of fifty-nine links, or nearly forty feet, in its whole length across the adjoining proprietor. It needs no argument to show that such a variation may affect most vitally the rights and interests of the landholder. The objection is fatal.

It is objected *in limine* by the defendant in error, that the judgment ought not to be reversed, because the *certiorari* was improvidently allowed. It is certainly true, as insisted in argument, that the *certiorari* might have been dismissed by the court below, as having been improvidently issued. The granting of a *certiorari* is not a matter of right, but of sound discretion; and when it is perceived that the rights of others will be affected by the delay or laches of the applicant, or that any great interest will be prejudicially affected, the court in its discretion will disallow the writ, or dismiss it if allowed. But the allowance or denial of the writ, resting in discretion, is not the subject of a writ of error. It was so unanimously adjudged by this court, in the Camden election case. *The State* v. *Wood*, 3 *Zab*. 560.

But conceding that error would lie, it is not perceived that it could at all aid the defendant in error. If the Supreme Court, in its discretion, ought to have disallowed the *certiorari*, upon the ground that the public interests would suffer by the delay occasioned by the course of the plaintiff in error. It surely would afford no remedy for that error, now that the delay has been incurred, for this court to close its eyes against obvious errors, existing in the record.

The judgment of the Supreme Court must be reversed and the return set aside.

The vote of the court was as follows:

*For Affirmance*—Judge ARROWSMITH.

*For Reversal*—Judges CORNELISON, GREEN, HUYLER, RISLEY, ELMER, WILLS, POTTS, WILLIAMSON.

CITED in *Powell* v. *Hitchner*, 3 *Vr.* 211.